Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

DSS TECHNOLOGY MANAGEMENT,   )
INC.,                        )   NO. 3:14-cv-05330-HSG
                           )
           Plaintiff,   )
  vs.                    )
                           )   San Francisco, California
APPLE, INC.,               )
                           )
    Defendant.       )   Tuesday, April 7, 2015
_____)

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
ELECTRONIC SOUND RECORDING - FTR 2:31-2:54

APPEARANCES:

For Plaintiff:
                BUETHER JOE & CARPENTER, LLC
                1700 PACIFIC AVENUE, SUITE 4750
                DALLAS, TX 75201

         BY:   **CHRISTOPHER MICHAEL JOE, ESQ.**

For Defendant:
                FEINBERG DAY ALBERTI & THOMPSON LLP
                1600 EL CAMINO REAL, SUITE 280
                MENLO PARK, CA 94025

         BY:   **MARC CHRISTOPHER BELLOLI, ESQ.**
               **DAVID L. ALBERTI, ESQ.**

*Transcribed by:*         *Kelly Polvi, CSR, RMR, FCRR*
                          *Contract Transcriber*

1    <u>**TUESDAY, APRIL 7, 2015**</u>                    <u>**2:31 P.M.**</u>

2                          P R O C E E D I N G S

3                              ---oOo---

4        THE CLERK:  Calling C 14-5330, DSS Technology Management

5    Inc. versus Apple, Inc.

6        Please step forward and state your appearances for the

7    record, please.

8        MR. JOE:  Good afternoon, Your Honor.  Chris Joe with

9    Buether Joe & Carpenter on behalf of the plaintiff, DSS.

10       THE COURT:  Good afternoon, Mr. Joe.

11       MR. BELLOLI:  Marc Belloli, Your Honor, for Apple.  And

12   with me is my partner, David Alberti.

13       THE COURT:  Good afternoon, Mr. Belloli.

14       MR. JOE:  I'll apologize.  My partner was supposed to be

15   here as well, but apparently this morning on his flight out the

16   passenger behind him had a heart attack, so they had to turn

17   around and head back to Dallas.  So I'm here to go against

18   Apple's lawyers by myself.

19       THE COURT:  Any excuse to get out of an appearance,

20   obviously.

21       I'm sorry to hear that.

22       So we're here for a case management conference here to --

23   this case has now been transferred to this district, and so we

24   need to get our processes in place and talk about a plan for

25   moving things forward.

1    And on my list, in no particular order, are setting our
2    schedule for the claim construction hearing, setting a deadline
3    for mediation -- I think there was some mention of mediation,
4    but not a deadline, so I think we ought to talk about that.
5        There was mention of a discovery order.  And that may be
6    a process that's different in Texas than it is here, but at
7    least we can talk about what the parties might be thinking in
8    that regard.
9        Fourth, we then had a number of potential motions, some
10   which I believe are already filed, so we need to get dates for
11   those.
12       And then I was interested in the potential technical
13   adviser that was slated to be appointed in Texas and thought it
14   made sense to think about what you all envision that person's
15   role being.
16       So those are my topics.  You all may have more, but why
17   don't we just, for sake of structure, start with the schedule
18   for the claim construction hearing.
19       **MR. JOE:**  Your Honor, Chris --
20       **THE COURT:**  And that's been fully briefed, as I
21   understand it; is that right?
22       **MR. JOE:**  That is correct, Your Honor.  It's been fully
23   briefed.  There is a motion pending with respect to some of the
24   evidence that Apple intends to introduce at hearing.  That
25   could either be heard prior to the claim construction hearing

1    or at the claim construction hearing.

2         When we were in East Texas, I think the plan at the time

3    was for the motion to be heard at the same time as the claim

4    construction hearing.

5         **MR. BELLOLI:**  And that motion's not fully briefed yet.

6         **MR. JOE:**  Oh, I'm sorry.  The motion itself is on file,

7    but it's not -- (indiscernible - simultaneous speaking.)

8         **MR. BELLOLI:**  On file, yeah.

9         **MR. JOE:**  -- response.

10        **MR. BELLOLI:**  So that motion was on file.  There's two

11   kind of discovery-related motions that aren't fully briefed.

12   There's a motion to strike inventor testimony, they don't want

13   the inventor testimony to come in, and then there's a motion to

14   supplement invalidity contentions by Apple.

15        There's also a motion to stay that will be fully briefed

16   as of this Friday, based on proceedings in the patent office.

17        **THE COURT:**  Right.  Well, let's see.  First, in terms of

18   the scheduling of the hearing itself, so we get that resolved,

19   I'd like to set the tutorials for May 6th.

20        **MR. JOE:**  I have a Federal Circuit hearing that day.  Is

21   there any way we could slide that out?

22        **THE COURT:**  We could -- well, so --

23        **MR. BELLOLI:**  Actually, if counsel for plaintiff has a

24   conflict, we'll be in the Northern District as well.

25        **THE COURT:**  Mm-hm.  Well, here, the potential dates -- so

I'll just give them to you all and then we can figure them out.

Monday, May 4th; Tuesday, May 5th, in the morning; Thursday, May 7th, in the morning; any time Friday, May 8th; the morning of Thursday, May 14th; or any time May 15th. That's Friday.

So I'd like to make one of those work because otherwise we're looking at late May or June.

MR. BELLOLI: The three that would work for Apple, Your Honor, would be May 4th, May 14th, and May 15th, out of those six dates.

And this is for the tutorial only; is that correct?

THE COURT: This is for the tutorial, but then we're also going to have to find time for the claim construction hearing too.

But starting with the tutorial.

Mr. Joe, can you make -- and just so you know how much time we'd be looking at, it strikes me that two hours is sufficient for the tutorial, so we would be looking at a two-hour hearing.

MR. JOE: I think that's fair.

May 4th is bad for us, Your Honor.

I'm just going through my calendar. I'm sorry.

May 7th could work. The 8th could work.

THE COURT: I think now we're down to the 14th or 15th, due to Apple's counsels' schedule.

1          **MR. JOE:**  15th would work.

2          Actually, Your Honor, the Eastern District of Texas has

3     also scheduled its *Markman* hearing in a related case, same

4     patent, on the 14th.  So we're going to be arguing that on the

5     14th in East Texas.  So we could come out here on that Friday.

6          **THE COURT:**  Okay, well --

7          **MR. JOE:**  Or that evening.

8          **THE COURT:**  Okay, well, do we -- would it work for your

9     travel schedule to set it in the morning?  Say 11:00 o'clock?

10    Or would early afternoon be better?

11         **MR. JOE:**  I'd say afternoon is probably safer.

12         **THE COURT:**  Okay.  Well, why don't we say 1:30 on the

13    15th.  So 1:30 to 3:30.  Although -- so here's the trick,

14    though, because then we have to have the claim construction

15    hearing later.

16         Yes.  This is the problem.  I think the 15th is

17    essentially the last date that I've got available until late

18    May or June.  I don't want to kick it that far.

19         And so what I wonder is whether we should set the *Markman*

20    hearing itself for that day, the 15th, and then try to find

21    some time earlier to squeeze in the tutorial.

22         **MR. BELLOLI:**  Would that be the same time, Your Honor?

23         Would that be the same time, Your Honor, the 1:30 to --

24    oh --

25         **THE COURT:**  Well, so the *Markman* hearing I would allocate

three hours.  And so yeah, we could do 1:30 to 4:30 on the
15th.

    **MR. JOE:**  That's fine with the plaintiff, Your Honor.

    **THE COURT:**  Okay, so that's the claim construction
hearing.

    **MR. BELLOLI:**  Just to give Your Honor a preview of it,
there's nine terms, so it's not going to be -- and there's only
one patent, so this isn't as big as some other cases.

    And I think probably there's two or three terms that will
take the bulk of the time, compared to the rest of them.

    **MR. JOE:**  As an alternative, we could do it all one day.

    I know it's a lot for Your Honor to absorb, but it's --
we'd be willing to do that, too, if that helps you.

    **THE COURT:**  It is.  But I think, on balance, that
probably is our best bet.

    So if we were to do that, though, the problem is we'd be
cutting it close, potentially, with your flight schedule.

    But then my inclination would be to, say, have the
tutorial from 11:30 to 1:30 and the claim construction hearing
from 1:30 to 4:30.

    **MR. JOE:**  I think we can do that, Your Honor.

    **THE COURT:**  All right.

    **MR. JOE:**  As long as nobody has a heart attack on the
flight again.

    **THE COURT:**  I will leave that to your good judgment to

make sure that doesn't occur.

All right. So we'll have a full slate on the 15th, with the tutorial from 11:00 to 1:30 and then the claim construction hearing from 1:30 to 4:30 that afternoon.

**MR. BELLOLI:** And with regards to the tutorial, I know a number of judges in this district typically like to have experts give the tutorial.

The way this case went down -- because it was in Texas before -- I think the only real way we can do this is with attorney presentations, given how this has played out so far, which --

**MR. JOE:** I agree with that. And I don't even think it will take two hours.

**MR. BELLOLI:** I don't think so either. Hour and a half. Hour. Hour and a half.

**MR. JOE:** I think we'll keep it short.

**MR. BELLOLI:** Yes.

**THE CLERK:** And I need you to stay --

**MR. BELLOLI:** Hour. Hour and a half.

**THE COURT:** Okay. Well, that sounds fine.

Then why don't we -- and that -- that's fine with me.

All right. So that's our claim construction schedule.

In terms of the motions, in terms of the motion to strike, my inclination was that that's a discovery dispute that ought to be handled under my standing order.

In essence, that there's a meet and confer and you work
out as much as you can, and then, to the extent you can't, the
parties initially submit a joint letter brief setting out their
positions and then I can assess it and either decide it based
on that or order more briefing, if I think it's necessary.

But I think that that would be a valuable first step
here.

So if you all can do that, then I'll take it from there.

MR. JOE:  Your Honor, with respect to that motion, then,
given the fact that the plaintiff has already filed the motion,
can we consider that the letter brief?

We've already met and conferred about the issues when the
case was pending in East Texas.

THE COURT:  Right.

MR. JOE:  But to me it doesn't make sense to have to
write a letter that copies the brief, since --

MR. BELLOLI:  I think it might make sense to have a
letter because that brief is 15 pages long.

THE COURT:  See, that's what I'm thinking.

MR. BELLOLI:  Yes.

THE COURT:  I mean, basically if you all can distill both
sides' positions --

MR. JOE:  I got you.

THE COURT:  -- into one piece of paper, that's a helpful
start for me.

1       **MR. JOE:** Okay.

2       **THE COURT:** So I will look for that, as soon as you all

3  can get around to it.

4       It's your dispute, so to the extent that you can meet and

5  confer and put it together, I'll look at it as soon as you do

6  that.

7       Then, with regard to the motion to supplement the

8  invalidity contentions, it looked like there was a proposed

9  briefing schedule for that. Or is that one already completely

10  briefed?

11       **MR. BELLOLI:** Oh, the opening brief? Apple's opening

12  brief is on file, and then the opposition and reply remain to

13  be filed.

14       **THE COURT:** I see. And I think -- I see that now.

15       So you proposed April 14th for opposition and then April

16  21st for reply?

17       Which is fine with me.

18       **MR. BELLOLI:** That's correct, Your Honor. That was the

19  proposal.

20       **THE COURT:** Okay. That's --

21       **MR. BELLOLI:** Then there would be no -- we don't have a

22  notice hearing date for that. That's where the little transfer

23  kind of threw a wrench in things.

24       **THE COURT:** Yes, that's right.

25       And actually, my next available hearing date is June

11th, and so we would end up being down the road a ways.

   **MR. BELLOLI:**  That -- for that one, I don't think that's
a problem.  There's not the -- I think the same kind of urgency
for that one as some of the other motions.

   **THE COURT:**  Okay.  So we'll make that the schedule.
Opposition on the 14th of April, reply on the 21st, and hearing
on that motion on June 11th.

   And then with regard to the motion to stay, I understand
that it will be fully briefed shortly, and, once it is, I'll
decide it.

   **MR. JOE:**  Without argument -- or without oral argument,
Your Honor?

   **THE COURT:**  I'll decide, once I see it.

   When is it noticed for now?

   **THE CLERK:**  April 30th.

   **THE COURT:**  Okay.

   **MR. JOE:**  Okay.  And we actually had a conversation at a
break, Your Honor.  April 30th date won't work for us.  We've
got a hearing in San Jose that day on a case against Google
that may last all day.

   So to the extent that matters to Your Honor --

   **THE COURT:**  Okay, well, what I would say is I'm not
deciding right now whether there will or won't be a hearing,
but if -- I think you should meet and confer and figure out
what dates could work after the 30th for a hearing on that

1    motion and let us know.

2        MR. BELLOLI:  The only concern I have about that is what

3    Your Honor just said, is that your next date is June 11th.  And

4    there could be a lot of things going on in this case between

5    now and then, notably the *Markman* hearing, that would become

6    moot if the case is stayed.

7        So if there's a way to keep that on the front of --

8        THE COURT:  Fair enough.  I mean, I just -- it sounds

9    like you'll need to --

10        MR. BELLOLI:  Okay.

11        THE COURT:  -- put your heads together and figure out

12    what dates both parties could do it, I'll consider that

13    request, based on our calendar.

14        All right.

15        MR. BELLOLI:  I can tick off one of these points real

16    quick, Your Honor, if you'd like me to.

17        THE COURT:  Sure.

18        MR. BELLOLI:  I think the discovery order -- we'll put

19    something together.  That's not going to be something

20    controversial; it will be just largely discovery limits,

21    interrogatories, RFAs, things like that.  And I don't

22    anticipate any problems working that out.

23        THE COURT:  All right.  So it's in the nature of a

24    stipulation in essence?

25        MR. BELLOLI:  In essence, yes.

1     **MR. JOE:**  Most likely.

2     **MR. BELLOLI:**  Yes.

3     **THE COURT:**  Okay.  Well, that sounds fine.  I'll look for

4     it when you submit it.

5     **MR. BELLOLI:**  I think the last two Your Honor had were

6     mediation and the technical adviser.

7     The technical adviser wasn't going to be, as I understand

8     it, someone who was writing reports and recommendations, but

9     more someone who would be someone that the Court could call to

10    ask questions if it was necessary.

11    **THE COURT:**  Mm-hm.

12    **MR. JOE:**  I think that's generally accurate, Your Honor.

13    The way Judge Love usually does it in Tyler is to have a

14    technical adviser sit through the *Markman* hearing and advise

15    him on claim construction issues.

16    **THE COURT:**  Mm-hm.

17    **MR. JOE:**  There's a lot of studying, the background work.

18    Because the judge is very busy.

19    **THE COURT:**  Mm-hm.

20    **MR. JOE:**  So to the extent you were willing to do that,

21    we're happy to do that as well, Your Honor.

22    **THE COURT:**  I see.

23    **MR. BELLOLI:**  Apple has no problem with using the

24    technical adviser here either.

25    **THE COURT:**  I see.  And --

1      **MR. JOE:** (Indiscernible) if you wanted to use him.

2      [Transcribers Note: Upon email inquiry, Mr. Joe

3      confirmed that the name spoken was "Richard Egan."]

4      **THE COURT:** Okay. And just from a logistic's standpoint,

5      in your experience with an adviser like Mr. Egan are the

6      Court's communications with him all on the record or is there

7      an informal component to it? How does that work?

8      **MR. JOE:** It tends to be informal in East Texas, Your

9      Honor. We don't know when the judge and Mr. Egan are talking

10     and we don't know what the contents are.

11     **MR. BELLOLI:** Yes, informal and off the record.

12     **THE COURT:** Okay. I see. Mm-hm.

13     All right, well --

14     **MR. JOE:** (Indiscernible - simultaneous speaking) and

15     just split the cost.

16     **MR. BELLOLI:** That's correct.

17     **THE COURT:** And you would remain willing to do that, even

18     though obviously now he'd need to be getting on a plane and

19     coming out here for the hearings?

20     **MR. BELLOLI:** We have no problem with that, Your Honor.

21     **MR. JOE:** If Your Honor wishes to have a technical

22     adviser, we're happy with that, too.

23     **THE COURT:** Okay. Well, I'll -- I'll make a decision

24     about that before our *Markman* proceeding gets going.

25     And then the only last thing I think was mediation

1    timing.  Have you all done the standard ADR stipulation?  You

2    may not have because you just transferred in.

3        **MR. BELLOLI:**  We have not, but it will be private

4    mediation.

5        And we were running close to a mediation, court-ordered,

6    last time, but was around the *Markman* hearing.

7        Apple's preference here would be to have any deadline for

8    mediation be after a *Markman* decision comes out.  We think that

9    would be kind of the most natural kind of fork in the road in

10   the case where mediation might, at that time, be fruitful.

11       **THE COURT:**  Do you agree, Mr. Joe?

12       **MR. JOE:**  I agree with that, Your Honor.  We -- typically

13   in my cases I like to have two mediation dates, one right after

14   the *Markman* ruling is issued and then one before trial, if the

15   case hasn't settled.

16       **THE COURT:**  Mm-hm.  Okay.

17       Well, what I would suggest is that you do the standard

18   ADR stipulation.  In this district it basically is a form.  You

19   can check private mediation and say that your preference would

20   be to have it be within "X" weeks of the *Markman* ruling.

21       And I can see the logic in that and I would enter that

22   order.

23       **THE CLERK:**  Is there a deadline for the parties to do

24   that, Your Honor?

25       **THE COURT:**  You all can probably do that this week.  All

right.  So by Friday?

Okay.  Any other -- oh, I just -- a question about
Mr. Carvey.

The one thing that I was wondering about -- so that Apple
envisions putting him on as a witness at the claim construction
hearing; is that right?

**MR. BELLOLI:**  We may.  I don't know if he'll be
available; I'll have to check with him.  If not, we would rely
on his written testimony.

Both sides have presented experts, and Apple also intends
to present, through the -- well, through the briefing and
possibly live -- it would be very short, it would be 10 minutes
of testimony, tops -- of the inventor, the sole inventor of the
patent.

**THE COURT:**  Mm-hm.  But you wouldn't be offering him as
an expert?

**MR. BELLOLI:**  No.  No.  Just as in- -- their inventor
testimony is extrinsic evidence that is often offered in patent
cases, and we feel like here it's particularly germane because
a couple of the terms at issue don't have a standard ordinary
meaning in the art and/or they were given specific meanings in
the patent.

And there's expert testimony backing that up, as well as
Mr. Carvey's, who, I mean, is the author of the patent,
largely.

So we -- I don't know if he's going to be available on that expedited schedule, but that relates to their motion as well.

**THE COURT:** Right.

**MR. BELLOLI:** Mm-hm.

**MR. JOE:** That's the subject of the motion to strike, Your Honor.

**THE COURT:** Right.

**MR. JOE:** Whether he's permitted to testify, and whether you're permitted to consider his testimony --

**MR. BELLOLI:** But he's not being offered as an expert.

**THE COURT:** All right. And so you all will be able to tee that issue up in sufficient time to have it decided before the *Markman* hearing?

**MR. JOE:** We will try to get our letter done by the end of the week.

**THE COURT:** Okay.

**MR. BELLOLI:** And it's a joint letter. They give their side first, then we fill ours in and -- yeah.

**THE COURT:** Exactly.

**MR. BELLOLI:** Okay.

**THE COURT:** With the key being just -- I mean, obviously it sounds like here there's been a significant amount of meet and confer already, but the normal course is to make sure that the dispute is narrowed as much as possible.

1    **MR. BELLOLI:**  This was narrowed as much as possible.  I

2    can assure of you that.  This one's pretty binary, Your Honor.

3         **THE COURT:**  All right.

4         **MR. JOE:**  "Yes" or "no."

5         **THE COURT:**  Makes it easy.

6         All right.  Anything else we should discuss today?

7         **MR. JOE:**  I don't think so.  I guess the only other

8    difference in our proposed schedule and Apple's proposed

9    schedule is we had suggested basing subsequent deadlines on the

10   Judge's -- on Your Honor's issuance of the claim construction

11   order in our case, as we feel that's probably more appropriate,

12   just given the fact that, you know, if we have a set date but

13   Your Honor hasn't issued an order, we have to do things twice

14   or we may have to move again.

15        So this just saves us a step in having to move the

16   deadlines again, if the Judge -- if Your Honor hasn't issued an

17   order yet on claim construction.

18        **MR. BELLOLI:**  I don't think that makes sense now,

19   especially given the *Markman* hearing we have, which is

20   May 15th.

21        And we already agreed on a fact discovery cutoff of

22   November 2nd.

23        So if Your Honor is issuing an order, say, in June,

24   you're going to have expert disclosures before the -- and the

25   fact discovery.

1    So anticipating Your Honor's probably going to have an

2    order out 60 days before the November 2nd, or, you know,

3    sufficiently in front of the fact-discovery cutoff, I don't see

4    why we wouldn't just go with the proposed dates.  Which I don't

5    think they -- that DSS has, necessarily, an objection to

6    Apple's proposed dates; they just wanted to trigger it off of

7    this ruling.

8         But given the agreed-upon fact discovery cutoff and where

9    we've positioned the *Markman* hearing -- because obviously we

10   didn't know the Court's calendar, I think it would make sense

11   to set these hard -- set dates --

12        THE CLERK:  I'm going to need you to come forward.

13        **MR. BELLOLI:**  -- well, flowing from the close of fact

14   discovery.

15        **THE COURT:**  Right.  Well, here's what I'll do.  I will

16   set the fact discovery date as November 2nd, 2015, since that's

17   agreed.

18        With regard to the other, essentially, expert discovery

19   dates, I will hold off on setting those until we get through

20   the claim construction process.

21        I suspect we're going to end up with a date that's not

22   triggered to the claim construction ruling but is just going to

23   be a date.  And it probably is going to be somewhere in the

24   neighborhood that we have.  But I think, just from a stepwise

25   perspective, let's get through that.

1      And then at that point I would also set further dates,

2   including pretrial and trial dates.

3      But for now I will set the *Markman* schedule and the close

4   of fact discovery on the agreed date and then we'll have

5   further date setting as we move forward.

6      **MR. BELLOLI:**  Sounds great, Your Honor.

7      **MR. JOE:**  Thank you, Judge.

8   That's all Plaintiff has.

9      **MR. BELLOLI:**  Nothing for Apple, Your Honor.

10     **THE COURT:**  All right.

11  So I'll see you -- we'll see you all on the 15th of May.

12     **MR. BELLOLI:**  Thank you, Your Honor.

13     **MR. JOE:**  Thanks.

14     **THE COURT:**  You're welcome.  Thank you.

15  (Proceedings adjourned at 2:54 P.M.)

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF CONTRACT TRANSCRIBER

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated April 25, 2015.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*

*(503) 779-7406; kpolvi@comcast.net*