UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DSS TECHNOLOGY MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No. 14-cv-05330-HSG <br><br> **ORDER ON DSS'S MOTION TO AMEND INFRINGEMENT CONTENTIONS AND APPLE'S CROSS-MOTION TO STRIKE EXPERT REPORT** <br><br> REDACTED VERSION <br><br> Re: Dkt. Nos. 213, 215, 219, 220, 231, 233, 246 |

Pending before the Court is DSS's motion to amend infringement contentions, Dkt. Nos., 215 ("Mot."), 220 ("Opp./XMot."), 232 ("Reply"), and Apple's cross-motion to strike DSS's infringement expert report, Dkt. Nos. 220, 234 ("XOpp."), 249 ("XReply"). The parties also filed related motions to seal portions of its briefs and accompanying exhibits. Dkt. Nos. 213, 219, 231, 233, 246. For the reasons provided below, the Court **DENIES** DSS's motion to amend infringement contentions and **GRANTS** Apple's cross-motion to strike DSS's infringement expert report.[1]

I. **BACKGROUND**

Plaintiff DSS Technology Management, Inc. filed its complaint against Defendant Apple, Inc. on November 26, 2013, in the Eastern District of Texas, alleging infringement of U.S. Patent Nos. 6,128,290 (the "'290 patent") and 5,699,357 (the "'357 patent"). Dkt. No. 1. DSS later withdrew all infringement allegations as to the '357 patent, so presently only the '290 patent is at issue. *See* Dkt. No. 96 at 2, 4. DSS alleges that Apple's development and sale of computers and

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. See Civ. L.R. 7–1(b).

other devices (iMacs, Mac Minis, Mac Pros, iPhones, iPads, and iPods) that provide wireless Bluetooth connections to peripheral devices (such as keyboards and mice) infringes the '290 patent. Specifically, DSS alleges that the '290 patent "solved the problem of how to connect peripherals wirelessly to a computer but still have sufficient battery life to be practical." Mot. at 6. This was achieved by "a communication scheme whereby the computer would place the peripheral[ devices] on a schedule as to when the devices might periodically communicate with the computer." *Id.* As opposed to keeping the Bluetooth transmitter in these peripheral devices always on, this "low duty cycle" reduced the peripheral devices' battery power consumption by turning the transmitter on for only short periods. There are two modes in which a device may operate to effectuate this "low duty cycle:" Bluetooth Sniff Mode and Sniff Subrating Mode. Dkt. No. 213-7 at 129. Both reduce battery power consumption by negotiating periods of time when the peripheral device's Bluetooth transmitter turns back on. *Id.* Sniff Subrating Mode "further reduc[es] the active duty cycle" and saves power by specifying lower maximum access points. *Id.*[2] Bluetooth Sniff Subrating Mode is an optional functionality. *Id.* at 668.

On March 13, 2014, DSS served initial Preliminary Infringement Contentions ("PICs") on Apple. *See* Dkt. No. 214-1 (Mot. Ex. 15). After correspondence with Apple, DSS served Amended PICs on May 2, 2014, which added information about the accused products. Dkt. No. 214-3. The contentions contain three claim charts—only Exhibit B (for the '290 patent for "Apple Bluetooth v4.0 Products") and Exhibit C (for the '290 patent for "Apple Bluetooth v2.1 Products") are at issue. Dkt. No. 215-18 (Ex. B, Ex. C). Exhibit B states that "[t]his particular set of Preliminary Infringement Contentions maps Apple's products that make use of the Bluetooth 4.0 standard . . . for wireless communications between a device and its peripherals to the claims of . . . the '290 patent." *Id.* Ex. B at 1. Similarly, Exhibit C states that "[t]his particular set of Preliminary Infringement Contentions maps Apple's products that make use of versions of the Bluetooth standards between versions 2.1 . . . and 4.0 for wireless communications between a

---

[2] Apple uses Bluetooth transmitter chips provided by ███████████████████████████████████████████████████████████████████████ Mot. at 12; *see also* Opp./XMot. at 21.

2

device and its peripherals to the claims of . . . the '290 patent." *Id.* Ex. C at 1. As relevant to the issues presented in the parties' motions, Bluetooth version 2.1 introduced Sniff Subrating Mode. Dkt. No. 220-2 at 2. Previous versions relied on Sniff Mode only. *Id.*

On November 7, 2014, the originally-assigned judge in the Eastern District of Texas granted Defendant's motion to transfer the case to the Northern District of California. Dkt. No. 85. On February 13, 2015, the case was reassigned to this Court. On December 4, 2014, Defendant filed two petitions for inter partes review (IPR) of the '290 patent. Dkt. No. 99 at 1. All of the '290 patent claims asserted by Plaintiff were covered by Defendant's petitions. *Id.* at 3. On May 1, 2015, the Court stayed this case pending results of the IPRs. Dkt. No. 122. Both IPRs resulted in a final decision in Plaintiff's favor, and the Court lifted the stay on July 27, 2018. Dkt. No. 145.

After holding a technology tutorial hearing on September 14, 2018 and a claim construction hearing on September 21, 2018, the Court issued a claim construction order on December 6, 2018. *See* Dkt. No. 175. The Court construed the disputed terms from Claims 1 through 4 of the '290 Patent. Immediately following the hearing, the Court conducted a further Case Management Conference. The Court scheduled various dates in the action, including a fact discovery cut-off date of June 14, 2019. *See* Dkt. No. 183.

## II. LEGAL STANDARD

The Patent Local Rules state that a plaintiff must provide:

> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
> . . .
> (e) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

3

*See* Patent L.R. 3–1(b), (e). "[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.,* 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000)).

The Patent Local Rules seek to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Accordingly, under Patent Local Rule 3-6, amendment to infringement contentions "may be made only by order of the Court upon a timely showing of good cause." In determining whether good cause exists, the Court considers (1) whether the moving party was diligent in moving to amend its contentions, and (2) whether the non-moving party would suffer prejudice if leave to amend were granted. *Koninklijke Philips N.V. v. Acer Inc.*, No. 18-CV-01885-HSG, 2019 WL 652868, at *1 (N.D. Cal. Feb. 15, 2019) (citation omitted). "The party seeking to amend its contentions bears the burden of establishing diligence." *Id*. (citation and quotations omitted). The moving party must establish diligence in two distinct phases: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Id*. (citation and quotations omitted). However, good cause "does not require perfect diligence." *Id*. (citation and quotations omitted). Absent undue prejudice to the non-moving party, good cause may be supported by "[r]ecent discovery of material, prior art despite earlier diligent search." Patent L.R. 3-6(b).

"In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (citation and quotations omitted). The rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro,* 467 F.3d at 1366 n.12 (citation and quotations omitted).

"[A] party may not use an expert report to introduce new infringement theories, new

4

infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014). "The scope of contentions and expert reports are not, however, coextensive." *Apple Inc. v. Samsung Elecs. Co.*, No. 5:12-CV-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014). "Infringement contentions need not disclose specific evidence, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (internal quotation marks omitted). "The threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Id.*

### III. ANALYSIS

The motion to amend infringement contentions and the cross-motion to strike DSS's expert report put essentially DSS's entire case at issue. The Amended PICs allege that Apple's products using versions of Bluetooth between v.2.1 and 4.0 infringed the '290 patent. Bluetooth Sniff Subrating Mode became an optional feature beginning with v2.1; prior versions—v1.0 to 2.0—only had Bluetooth Sniff Mode. Without dispute, Apple's products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In its motion, DSS asks the Court for leave to amend its infringement contentions to include contentions relating to Broadcom proprietary mode. DSS also argues that the Amended PICs put Apple on notice that its products operating in just Bluetooth Sniff Mode infringe the '290 patent. Apple disagrees and argues that DSS did not show diligence in seeking amendment, and that the Amended PICs do not allege that Apple's products operating in Sniff mode infringe the '290 patent. Accordingly, Apple asks the Court to strike DSS's expert report for impermissibly substituting two new theories. The Court addresses each motion in turn.

//

//

## A. Motion to Amend Infringement Contentions

DSS seeks to add ▮▮▮▮▮▮▮▮▮▮ as an infringing mode to its Amended Contentions. Mot. at 21–25. This proposed amendment arises out of DSS's purported recent discovery on May 15, 2019, during a Rule 30(b)(6) deposition, that Apple ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mot. at 21–22. As noted above, the Court must consider whether DSS acted with diligence in moving to amend its contentions and whether Apple would suffer prejudice if leave to amend were granted.

### i. Diligence

The Court finds that DSS did not display sufficient diligence to show good cause to add ▮▮▮▮▮▮▮▮▮▮ to its infringement contentions. Specifically, DSS did not display diligence in discovering the basis for this amendment. DSS alleges that it discovered the basis for amendment during the deposition of Jason Giles, on May 15, 2019, when Giles explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mot. at 21; *see also* Dkt. No. 213-15 at 4–5. But DSS should have discovered that information sooner. The Court provides a brief review of the case's timeline to explain its holding.

#### a. Early Litigation (2014)

Apple made its source code available to DSS by August 2014. Dkt. No. 219-6. During this initial period, DSS had from August 2014 until the stay of the case pending transfer of venue, which occurred on October 28, 2014, to discover Apple's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Dkt. No. 83. Apple represents that "[a] prompt inspection of Apple's source code . . . would have revealed the flaw in DSS' infringement case." Opp./XMot. at 15. Apple points to documents, including source code configuration files, produced during this early time period that showed Apple's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 15–16. Minimally, the bill of materials for Apple Wireless Keyboard indicates that ▮▮▮▮ provides a unit related to the Bluetooth capabilities of the keyboard. Dkt. No. 219-8 at 2, 8. DSS's July 19, 2018 letter to Apple acknowledged receipt

of the document, and made clear that DSS was aware that ▮ provided a Bluetooth component. Dkt. No. 231-12 at 4, 7–8. Additionally, source code produced in 2014 revealed that Apple ▮, and indicated that Apple implemented a feature titled ▮ *See* Dkt. Nos. 219-10, 219-12.

DSS responds that it could not make the discovery during this time because Apple had not provided the complete source code. Reply at 13. However, the documents that DSS cites in support of its claim that Apple failed to provide the appropriate source code at these early stages of the litigation do not support its position. For instance, Dkt. No. 231-8 simply indicates DSS's intention to investigate the source code, not, as DSS alleges, a "discover[y] that Apple had not provided the source code DSS needed." Reply at 13. Similarly, DSS's letter to Apple on July 19, 2018, "reiterates [DSS's] request for inspection" of Apple's source code, and does not necessarily show any deficiencies in Apple's source code production. Dkt. No. 231-12 at 7. In the letter, DSS noted that "it is unclear whether the source code that Apple represented would be produced included the firmware for the Bluetooth chips contained in the Accused Devices," and requested the source code relating to ▮ be produced, if it was not already. *Id.* at 7–8. This does not support DSS's allegation that Apple failed to produce the source code, but instead suggests that DSS had not substantively reviewed the source code between August 2014 and October 28, 2014 to determine whether the source code was complete.

      b. Post Lifting of Stay (July 27, 2018–onwards)

DSS argues that after the stay was lifted, Apple failed to supplement its production as requested in DSS's July 19, 2018 letter. Reply at 9–10. Additionally, Apple's change of counsel further delayed inspection of the source code and receipt of documents. *Id.* DSS finally reviewed the source code again on November 28, 2018, noting deficiencies in technical and non-technical document productions. *See* Dkt. No. 231-22 at 3, Dkt. No. 231-23. DSS alleges that at the January 9, 2019 code review Apple's counsel first mentioned that ▮ likely had the source code that it needed. Reply at 11. Thereafter, DSS served a document subpoena on ▮ on January 29, 2019, Dkt. No. 220-5, inspected ▮ source code on April 12, 2019, Dkt. No. 220-6, and deposed ▮ about ▮ on June 4, 2019, Dkt. No.

7

213-10.  DSS also served a Rule 30(b)(6) notice for technical topics on May 6, 2019, Dkt. No. 219-20 at 4, and deposed Apple's Jason Giles on May 15, 2019, Mot. at 22.  DSS alleges that all delay was attributable to Apple and ▮▮▮▮ during this time.  Reply at 17–18.  DSS then filed this motion seeking to amend to its infringement contentions on July 8, 2019.  *See* Mot.

"The critical issue is not when [DSS] discovered this information, but rather, whether [it] could have discovered it earlier had it acted with the requisite diligence."  *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).  Here, the Court finds that DSS could have discovered that the accused Apple products ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ earlier.  Discovery was open in 2014, for a period in 2015 (after the case was transferred and before the Court imposed a stay), and then was open after the Court lifted the stay and issued a scheduling order in 2018.  *See* Dkt. Nos. 83, 106, 149, 183.  DSS had indications since 2014 that Apple ▮▮▮▮▮▮▮▮, based on documents showing that ▮▮▮▮ for the peripheral devices and source code ▮▮▮▮▮▮▮▮.  *See* Dkt. Nos. 219-8, 219-10.  While these pieces may not have decisively established Apple's ▮▮▮▮ ▮▮▮▮, DSS had ample time after the Court lifted the stay on July 27, 2018, but before the close of discovery, to make this further determination.  Additionally, DSS knew that Bluetooth Sniff Subrating Mode was an optional feature, and should have been on high alert to confirm through Apple's source code that its products operated in such a mode.  Instead, even accepting DSS's allegation that it had been attempting to depose Mr. Giles since March 5, 2019, approximately seven months passed after DSS had these indications before it requested a Rule 30(b)(6) deposition.  *See KlausTech, Inc. v. Google, Inc.*, No. 10-CV-05899-JSW (DMR), 2017 WL 4808558, at *5 (N.D. Cal. Oct. 25, 2017) ("While [DSS] may have had strategic reasons to wait until late in discovery to depose a 30(b)(6) witness regarding the accused product[s], embarking on such a strategy was fraught with risk, especially under the rubric of the Patent Local Rules.").

Importantly, while DSS accuses Apple of "fail[ing] to alert DSS that ▮▮▮▮ ▮▮▮▮

8

▮▮▮ the burden was on DSS to detail its infringement theory up front, then substantiate it through factual discovery and timely seek amendment if necessary. Mot. at 10. DSS should have substantively reviewed the source code in 2014 to confirm use of Bluetooth Sniff Subrating Mode, and it should have followed up on the indications that Apple ▮▮▮▮▮▮ by making specific technical requests and taking a timely Rule 30(b)(6) deposition. DSS does allege that Apple frustrated the discovery process at various points of the discovery period, yet DSS only raised disputes to the Court in two instances. *See* Dkt. Nos. 158, 188. The first dispute did not concern any of the issues noted here, but only concerned documents relating to a witness in preparation for the claim construction hearing. *See* Dkt. No. 158. The second was filed on May 22, 2019, concerned the precise dispute that resulted in the present motion, and occurred too late to indicate DSS's diligence. *See* Dkt. No. 188. If DSS seeks to rely on Apple's purported actions to frustrate discovery, it needed to raise this dispute with the Court in a timely manner. Because it failed to do so, DSS cannot show diligence in reviewing the source code.

DSS's attempt to now bring an entirely new theory of infringement, five years after the case was first filed, after IPR, and after the close of discovery certainly does not reflect the diligence required to meet the good cause standard. Instead, it appears to be a last ditch effort to maintain this litigation now that it is established that Apple does not practice its accused theory of infringement. *See Capella Photonics, Inc. v. Cisco Sys. Inc.*, No. 14-CV-03348-EMC, 2019 WL 2359096, at *4 (N.D. Cal. June 4, 2019) ("Having exhausted its first bite, and exercising no diligence in putting at issue the claims Plaintiff now belatedly seeks to amend into this case . . . Plaintiff's conduct in seeking to start litigation anew after losing round one can best be characterized as tactical.").

### ii. Prejudice

There is "no need to consider the question of prejudice" when the moving party is unable to show diligence. *O2 Micro*, 467 F.3d at 1368. While the Court need not address this prong, allowing DSS to amend its infringement contentions at this stage clearly would prejudice Apple. The Court already has conducted the claim construction hearing, and fact and expert discovery have already closed. *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS

(JSC), 2016 WL 7386136, at *5 (N.D. Cal. Dec. 21, 2016) ("[Defendant] would be prejudiced here because it identified the claim terms that it wanted the district court to construe in reliance on the theories of infringement in [plaintiff's] contentions. If [plaintiff] had set forth different infringement theories (as it seeks to now), [defendant] may very well have selected different terms for construction.").

Because DSS fails to show diligence in discovering the basis for the amendment and allowing amendment would prejudice Apple, the Court **DENIES** DSS's motion to amend infringement contentions to add ▌ contentions.

### B. Cross-Motion to Strike Infringement Expert Report

Apple argues that the Joint Expert Report of Scott A. Denning and Randal H. Direen relies entirely on new theories of infringement: (1) operating products ▌ discussed above and (2) operating products in Bluetooth Sniff Mode. Opp./XMot. at 21; *see also* Dkt. No. 219-22 (Ex. P). Because the Court finds that DSS failed to show diligence in moving to amend its infringement contentions, the Court agrees that the expert report impermissibly relies upon ▌ theory. The Court must then determine whether Bluetooth Sniff Mode is a new theory of infringement. For the reasons below, the Court finds that it is a new theory.

The parties first recognized the dispute regarding Sniff Mode based on DSS's April 2019 response to Apple's interrogatories. The interrogatory asked DSS to "[d]escribe in detail, on an element-by-element basis in the form of a claim chart, any product that DSS contends practices the patents-in-suit or infringes the patents-in-suit." Dkt. No. 188-1 at 5, 8–13, 17. DSS's third amended response to the interrogatory included a claim chart that Apple argues presented "new theories of infringement," although DSS maintains the theories were covered in its Amended PICs. After initially raising this contention with Magistrate Judge Beeler (who is handling discovery disputes, *see* Dkt. No. 193), the parties indicated they would file this merits dispute with the Court. Thereafter, DSS filed its motion to amend infringement contentions and Apple filed its cross-motion to strike expert report alleging that DSS's reliance on products operating in

10

Bluetooth Sniff Mode represents a new infringement theory. *See* Mot. at 6, Opp./XMot. at 21.

DSS's Amended PICs specifically allege that the accused Apple products "that make use of versions of the Bluetooth standards between versions 2.1 . . . and 4.0 for wireless communications between a device and its peripherals" infringe the '290 patent. Dkt. No. 215-18 (Mot. Ex. 17, Ex. C). As already noted, Bluetooth Sniff Subrating Mode became an optional feature beginning with v2.1, and prior versions used only Bluetooth Sniff Mode. DSS's response to Apple's interrogatory on April 11, 2019, included a claim chart that was different from the Amended PICs. See Dkt. No. 214-11 (Mot. Ex. 25) at 8–13. The claim chart specifically used Bluetooth v.1.0 as an example of the contentions, whereas DSS's Amended PICs exclusively used Bluetooth v.2.1 and 4.0 as examples. *Compare id. with* Dkt. No. 215-18 (Mot. Ex. 17) at Ex. B: 79–80, Ex. C: 137–38. At issue here is whether the interrogatory claim chart was substantively different than the Amended PICs such that DSS presented a new infringement theory.

Apple first argues that the Amended PICs identified only products with Bluetooth v.2.1 or later, which is precisely when Bluetooth Sniff Subrating Mode became available, as allegedly infringing the patent. Opp./XMot. at 8. DSS argues that this distinction is without merit because even v2.1 uses Bluetooth Sniff Mode in its operations, and that it made this clear in its Amended PICs. Mot. at 15–16. The technology supports DSS's argument since "a device cannot enter into Sniff Subrating mode without entering into Sniff Mode first." *Id.* at 15 (citing Dkt. No. 213-7 (Mot. Ex. 3) at 346–49). When operating in Bluetooth Sniff Subrating Mode, a device cycles between Subrating and Sniff mode "after transmitting a packet requirement acknowledgment until the baseband acknowledgment is received." Dkt. No. 213-7 (Mot. Ex. 3) at 348. Referring to v2.1, then, does not exclusively signify operating in Bluetooth Sniff Subrating Mode.

Apple next argues that the Amended PICs relied on particular functionality available only after v2.1, which DSS now has abandoned in its new theory. Opp./XMot. at 9–14. Apple points to DSS's claim element 1.4 where the Amended PICs referred to "commands and synchronizing information to establish Sniff mode operation, e.g. LMP_sniff_req commend and the synchronizing parameters therein," Dkt. No. 215-18 (Mot. Ex. 17) at Ex. C 139. In DSS's supplemental interrogatory response, it referred to Bluetooth Frequency Hop Synchronization

11

("FHS") packets as the form of "synchronization information" sent to the peripheral devices. Dkt. No. 214-11 (Mot. Ex. 25) at 10. DSS points to language referencing a frequency hop pattern in the Amended PICs; however, as Apple notes, this appears in claim element 1.5, not 1.4. Opp./XMot. at 10. Still, DSS does not appear to actually allege new functionality for claim element 1.4. DSS provided information as to how the synchronization information is sent (via FHS), rather than changing its claim that the computer sends commands and synchronization information. Specifically, Apple fails to explain whether the information is sent through a different mechanism in v.2.1 and above such that this functionality makes a new infringement theory.

Apple next points to changes between claim element 1.8 and DSS's supplemental interrogatory response, arguing that DSS previously noted a claim limitation specifying the "code sequence" (which determines when a computer communicates with the peripheral devices) of "sniff subrating commands and contents thereof." Opp./XMot. at 10. DSS responds that the Amended PICs only used this as an example. The entire contention reads:

> Bluetooth-compliant systems include server and peripheral transmitters being energized in low duty cycle RF bursts at intervals determined by a code sequence (e.g. the sniff subrating commands and contents thereof, etc.) which is timed in relation to the synchronizing information.

Dkt. No. 215-18 (Ex. 17) at 143–44. Reading this contention in isolation, it is not clear that DSS intended to limit claim element 1.8 to a sniff subrating code sequence. However, it is in this vagueness that DSS has a problem. What is clear when reading through the Amended PICs is that it is *unclear* whether DSS's contentions refer to both Sniff Mode and Sniff Subrating Mode as infringing modes or to just Sniff Subrating Mode. Bluetooth Sniff Mode is the underlying technology, so it is certainly mentioned throughout the Amended PICs, but there are no specific limitations that refer to Sniff Mode.[3] Without any specific limitations referring to Sniff Mode, the

---

[3] Somewhat curiously, DSS seeks to amend its infringement contention to include Sniff Mode limitations. *See* Dkt. No. 214-15 (Chart 1). Had Sniff Mode been originally included in the Amended PICs, that amendment would not be necessary.

12

Court cannot construe the contentions as covering both modes. By way of example, in claim 4, DSS again contends that Apple's products use Sniff Mode, but then states:

> For example. Bluetooth's v2.1 Sniff mode are [sic] operable such that the server microcomputer unit transmits RF synchronizing beacons (e.g. transmissions at sniff subrate anchor points, etc.) at times within each of a predetermined sequence of frames which times vary in accordance with a code unique to the particular server microcomputer unit (e.g. per the max_sniff_subrate parameter in the master the LMP_sniff_subrating_req, etc.)

*Id.* at 149. Similar to claim element 1.8 to which Apple points above, DSS uses "e.g." here to indicate that it is an example, while again only mentioning sniff subrating operations. The limitations consistently reference Bluetooth Sniff Subrating Mode functionality. Because "[t]he purpose of Patent Local Rule 3–1 . . . is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims," the Court concludes that the Amended PICs did not put Apple on notice of the theory that the accused products operating in both Bluetooth Sniff Mode and Bluetooth Sniff Subrating Mode infringed the '290 patent. *See InterTrust Tech. Corp. v. Microsoft Corp.*, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003); *see also DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (Patent Local Rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case," but "a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it."). Although to operate in Bluetooth Sniff Subrating Mode, products necessarily must operate in Sniff Mode, this fact alone, without any clear contentions or limitation, is insufficient to put Apple on notice that Sniff Mode is an infringing mode.[4]

Because the Court finds that DSS's expert report relies entirely on two new infringement theories (operating in ███████████████████████████████ and in Bluetooth

---

[4] DSS also fails to show good cause to amend its infringement contentions to include Bluetooth Sniff Mode as an infringing mode. Given that Bluetooth Sniff Mode was a baseline operating feature for all Bluetooth products, DSS was aware of the possibility of infringement from the beginning of the case and still failed to include this infringement theory in its Amended PICs. Allowing such an amendment at this late stage also would prejudice Apple, given that it never had the opportunity to pursue invalidity defenses or conduct factual discovery regarding this theory.

13

Sniff Mode), the Court **GRANTS** Apple's cross-motion to strike DSS's expert report.

**IV. MOTIONS TO SEAL**

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted).

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotation omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

Because the parties move to file documents related to nondispositive motions, the Court will apply the lower good cause standard.

The parties have provided good cause for sealing portions of the various documents listed below because they contain confidential business and proprietary information relating to the operations of Defendant. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 6115623 (N.D. Cal. Dec. 10, 2012); *see also Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011); *Linex Techs., Inc. v. Hewlett-Packard*

14

Co., No. C 13-159 CW, 2014 WL 6901744 (N.D. Cal. Dec. 8, 2014). Specifically, some of the documents contain information regarding the identity and operations of third party supplied components in Apple's products or contain confidential information regarding the operations of source code for Apple's products. The parties have identified portions of the unredacted versions of motions and exhibits as containing confidential and proprietary business information, and the Court finds good cause to grant the motions to file the below-indicated portions under seal.

However, for a number of the documents listed below, the parties have failed to narrowly tailor the redactions to confidential and proprietary business information. For example, many of the pages in documents the parties seek to seal in their entirety include the same information in DSS's infringement contentions, the parties unredacted portions of the briefs, or public information provided in exhibits (particularly regarding Bluetooth Sniff Mode). The parties must tailor their sealing requests. The parties also do not explain how the materials explaining Bluetooth Sniff Mode, much like DSS's infringement contentions, contain confidential business or product information. Sealing these documents in their entirety is substantially overbroad, and the parties do not thoroughly articulate how disclosure of the material in each proposed redaction would lead to specific harm or prejudice.

Accordingly, the Court **ORDERS** as follows:

| Docket Number Public/(Sealed) | Document | Portions Sought to be Sealed | Ruling |
|---|---|---|---|
| **DSS's Admin. Motion to Seal, Dkt. No. 213** | | | |
| 215/(213-2) | Excerpts of DSS's Motion to Amend Infringement Contentions | Pages and lines: i:13-14; 1:16-17, 19, 20; 2:11; 4:18-21, 25; 5:1-2, 4-5, 7-10; 7:14-15; 8:20-21, 24-27; 9:1-8, 9-11, 12-28; 10:1-2, 7-8, 11, 15; 14:9, 10-12; 21:1-2, 3-4, 5-6; 22: 2, 5, 10, 11-12, 15-18, 19, 23, 24-27; 23:1-2, 3-4, 5-6, 11; 25: 10-11 | **GRANTED** |
| 215-3, 215-7, 215-13, 215-26/(213-6, 213-10, 213-16, 214-11) | Exhibits 2, 6, 12, 25 | Entire exhibits | **GRANTED** as to Exhibits 2, 6, 12<br><br>**DENIED** as to Exhibit 25: |

15

| Docket Number Public/(Sealed) | Document | Portions Sought to be Sealed | Ruling |
|---|---|---|---|
| 215-11, 215-12, 215-14, 215-15/(213-14, 213-15, 213-17, 213-18) | Exhibits 10, 11, 13, 14 | Entire exhibits | not narrowly tailored.<br><br>**GRANTED** as to Exhibits 10, 13, 14<br><br>**DENIED** as to Exhibit 11: not narrowly tailored. |
| 215-27, 215-28, 215-30/(214-12, 214-13, 214-15) | Exhibits 26, 27, 29 | Entire exhibits | **DENIED** as to all three exhibits: not narrowly tailored. |
| *Apple's Admin. Motion to Seal, Dkt. No. 219* | | | |
| 220/(219-4) | Excerpts of Apple's Opposition to DSS's Motion to Amend Infringement Contentions and Cross-Motion to Strike Expert Report | Pages and lines: i:19; 1:19-20, 22, 23, 25, 26; 2:1, 18-19, 20, 25, 26; 14:18, 21-22, 24; 15:15-16, 18-19, 20, 21, 22, 23, 24; 16:1-4,5, 6-9, 25; 17:3, 6, 8-10, 11, 12, 14-15, 27-28; 18: 1, 2; 21:14-15, 18; 22:13-14, 15-16, 22-25, 27, 28; 23:2, 3 | **DENIED** as to 22:13-14, 15-16, 22-25: not narrowly tailored.<br><br>**GRANTED** as to the remainder |
| 220-3, 220-4, 220-10, 220-12, 220-13, 220-17/(219-6, 219-8, 219-16, 219-18, 219-22) | Exhibits B, C, I, K, L, P | Entire exhibits or redacted portions identified in public filing | **GRANTED** as to Exhibits B, C, I, L, P<br><br>**DENIED** as to Exhibit K: not narrowly tailored. |
| 220-7, 220-8, 220-14/(219-10, 219-12, 219-20) | Exhibits F, G, M | Entire exhibits | **GRANTED** |
| *DSS's Admin. Motion to Seal, Dkt. No. 231* | | | |
| 232/(231-3) | Excerpts of DSS's Reply in support of Motion to Amend Infringement Contentions | Pages and lines: i:11-12, 1:5-6, 15, 16, 20-21, 23, 24-25; 2:1; 5:10, 11-12; 7:5-6, 8, 18-19, 20-25; 8:1-2, 11-12, 26; 9:7, 11-12, 12-13; 11:10, 20-21, 22-25, 26; 12:1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 20, 22, 26-27, 28; 13: 2, 3, 4, 8, 9-11, 13, 15;15:17-18 | **DENIED** as to 5:11-12; 7:5-6, 8, 18-19; 8:1-2, 11-12, 12:8, 20, 22, 28; 13:3, 8, 13: not narrowly tailored<br><br>**GRANTED** as to the remainder |
| 232-4, 232-6, 232-9, 232-10, 232-11, 232-12, 232-13, 232-14, 232-16, | Exhibit 3, 5, 8, 9, 10, 11, 12, 13, 15, 16, 19, 20, 21, 22, 25, 27, 31, 32, 33, 35 | Entire exhibit | **DENIED**: no supporting Rule 79-5(e)(1) declaration |

| Docket Number Public/(Sealed) | Document | Portions Sought to be Sealed | Ruling |
|---|---|---|---|
| 232-17, 232-20, 232-21, 232-22, 232-23, 232-26, 232-28, 232-32, 232-33, 232-34, 232-36/(231-8, 231-10, 231-13, 231-14, 231-15, 231-16, 231-17, 231-18, 231-20, 231-21, 231-24, 231-25, 231-26, 231-27, 231-30, 231-32, 231-36, 231-37, 231-38, 231-40) | | | |
| 232-5, 232-8, 232-18, 232-19, 232-24, 232-25, 232-30, 232-31, 232-35, 232-37/(231-9, 231-12, 231-19, 231-22, 231-23, 231-28, 231-29, 231-34, 231-35, 231-39, 231-40) | Exhibit 4, 7, 14, 17, 18, 23, 24, 29, 30, 34, 36 | Entire exhibits | **GRANTED** as to Exhibits 7, 14, 17, 18, 23, 24, 29, 30, 34<br><br>**DENIED** as to Exhibits 4, 36: not narrowly tailored. |
| 232-27, 232-29/(231-31, 231-33) | Exhibits 26, 28 | Entire exhibits | **GRANTED** |
| **DSS's Admin Motion to Seal, Dkt. No. 233** | | | |
| 234/(233-3) | Excerpts of DSS's Response to Apple's Cross-Motion to Strike Expert Report | Pages and lines: i:7, 1:12; 2:26-27; 3:6-8, 9-10, 15-16; 5:10-15, 24-25, 26-27; 10:16, 19, 26; 11;1, 3-4, 8-9, 10-12, 17-19, 23-25, 26-27; 12:4 | **DENIED** as to 3:6-8, 9-10, 15-16; 5:24-25, 26-27; 11:8-9: not narrowly tailored<br><br>**GRANTED** as to the remainder |
| 234-3/(233-8( | Exhibit 2 | Entire exhibit | **DENIED**: not narrowly tailored |
| **Apple's Admin Motion to Seal, Dkt. No. 246** | | | |
| 249/(246-4) | Excerpts of Apple's Reply in support of its Cross-Motion to Strike Expert Report | Pages and lines: 1:10, 21; 2:3, 12, 15-16, 20, 21, 22, 25-26; 3:2, 28; 4:5; 6:7, 16, 18, 19, 20, 22, 26; 7:1, 3, 4, 5, 6, 7, 12, 14, 15, 16, 17, 18, 19-20, 21-22; 8:1,-3, 4-5, 8-9, 11-12, 12-14, 15, 16-17, 19, 19-20, 21, 23, 24; 9:12 | **DENIED** as to 8:11-12, 15, 19: not narrowly tailored<br><br>**GRANTED** as to the remainder |

17

## V. CONCLUSION

Because DSS fails to show diligence in seeking amendment, and amendment would prejudice Apple at this late stage, the Court **DENIES** DSS's motion to amend infringement contentions. The Court also **GRANTS** Apple's cross-motion to strike DSS's infringement expert report because it relies on two new theories of infringement.

The Court further **GRANTS IN PART** and **DENIES IN PART** Dkt. Nos. 213, 219, 231, 233, and 246. Because of the volume of documents, the Court will allow fourteen days (14) from the date of this order for the parties to file the unredacted versions of the materials or file renewed motions to seal according to the requirements discussed above. If the parties wish to file renewed motions to seal, the parties are directed to meet and confer before the submissions, coordinate redactions, and submit joint motions for any given filing the parties wish to keep partially redacted, which include all corresponding Civil Local Rule 79-5 declarations as attachments. Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the administrative motions are granted will remain under seal.

Finally, the Court sets a further case management conference for January 21, 2020 at 2:00 p.m. The parties should be prepared to discuss the consequences of this order and next steps for this case.

**IT IS SO ORDERED.**

DATED: 1/14/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge